UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

|  |  |
|---|---|
| IN THE MATTER OF JASMARIE LUNAS PAGAN, JERALDO LUNAS PAGAN, AND KARY LUNAS | Case No.: 3:26-cv-00104-DB |

**AMENDED VERIFIED PETITION TO PERPETUATE TESTIMONY**

## I.    INTRODUCTION

This is an action to perpetuate testimony about the death of Geraldo Lunas Campos, a 55-year-old Cuban immigrant, pursuant to Fed. R. Civ. P. 27(a)(1) ("Rule 27 Petition"). Mr. Lunas Campos died on or about January 3, 2026 while in federal immigration custody, at Camp East Montana, in El Paso, Texas. According to the sworn declarations of percipient witnesses to the circumstances of Mr. Lunas Campos's death, after denying Mr. Lunas Campos medicine, guards at the facility handcuffed him, shackled him, and forced him into a solitary confinement cell, after which Mr. Lunas Campos repeatedly stated that he could not breathe and was being asphyxiated. The El Paso County Office of the Medical Examiner has classified Mr. Lunas Campos's death as a homicide, with the cause of death as asphyxia due to neck and torso compression. Petitioners Jasmarie Lunas Pagain, Jeraldo Lunas Pagan, and Kary Lunas ("Petitioners") are Mr. Lunas Campos's surviving children. They will be filing a wrongful death and survival lawsuit in this District pursuant to federal law and Tex. Civ. Prac. & Rem. Code Ann. §§ 71.004, 71.021.

On January 17, 2026, the *Washington Post* reported that "[t]he Trump administration is seeking to deport two men who provided accounts of the Jan. 3 death of Geraldo Lunas Campos

at a Texas detention camp that differed from the Department of Homeland Security's description of the incident."[1]

Petitioners filed their first Rule 27 Petition with this Court on January 20, 2026 seeking to perpetuate the testimony of the initial two individuals identified in the media, Santos Jesus Flores and Antonio Ascon Frometa.

Since that time, Petitioners have obtained sworn declarations from Mr. Flores, Mr. Frometa, and three other witnesses detailing their knowledge of the circumstances of Mr. Lunas Campos's death. These declarations were sworn by the witnesses on either January 19, 2026[2] or January 24, 2026. Each of the five witnesses—Mr. Flores, Mr. Frometa, Henry Negrin Bolaño, Jenrry Melendez, and Mayron Pazpuerto—were percipient witnesses to the circumstances of Mr. Lunas Campos's death. Several of the percipient witnesses also stated that an additional witness with the name, "Coby," or Cobi Ardenis Nazareth, was an eyewitness to Mr. Lunas Campos's death. Mr. Flores, Mr. Frometa, Mr. Negrin Bolaño, Mr. Melendez, Mr. Pazpuerto, and Mr. Ardenis Nazareth are referred to herein collectively as the "Percipient Witnesses."

Petitioners hereby seek an order pursuant to Fed. R. Civ. P. 27(a)(1) to perpetuate the testimony of the Percipient Witnesses before the federal government makes them unavailable by removing them from this country.

As good cause for this Petition, through undersigned counsel, Petitioners state as follows:

## II.   JURISDICTION AND VENUE

1.   This Court has federal-question jurisdiction over this Petition pursuant to 28 U.S.C. §

---

[1] Douglas MacMillan, "DHS seeking to deport two men who said fellow ICE detainee was killed," WASH. POST, Jan. 16, 2026, https://www.washingtonpost.com/immigration/2026/01/17/detainee-death-witnesses-deported-dhsa/ (accessed Jan. 17, 2026).
[2] The undersigned counsel did not have access to the January 19, 2026 declarations until January 23, 2026.

2

1331 and Fed. R. Civ. P. 27(a)(1), subject-matter jurisdiction over Petitioners' anticipated claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), 28 U.S.C. § 1332 (diversity jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction for state law claims).

2. Venue is proper in this District because the acts or omissions that form the basis for Petitioner's anticipated litigation occurred within this district. Moreover, most of the anticipated adverse parties and/or their relevant agents reside in this District. Accordingly, this Court is the proper venue.

### III.     RULE 27 ALLEGATIONS

3. Petitioners meet all five of the requirements for a Rule 27(a)(1) petition set forth in Fed. R. Civ. P. 27(a)(1)(A)-(E).

4. **With respect to subsection (A)**, Petitioners expect to be parties to an action cognizable in a United States court but cannot presently bring it or cause it to be brought.

5. Petitioners are wrongful death beneficiaries of Mr. Lunas Campos pursuant to Tex. Civ. Prac. & Rem. Code § 71.004. Petitioners also appear to be heirs of Mr. Lunas Campos pursuant to Texas law and Tex. Civ. Prac. & Rem. Code § 71.021.

6. On or about January 3, 2026, Mr. Lunas Campos was detained in the custody of the Department of Homeland Security ("DHS"). DHS was holding him at the Camp East Montana facility located at Fort Bliss in El Paso, Texas. It is reported that DHS contracts with private companies to run Camp East Montana, including Acquisition Logistics, LLC, which appears to oversee operations, and Akima Global Services, LLC, which employs the facility's guards. *See, e.g.,* Michael Biesecker & Joshua Goodman, "Mystery Surrounds $1.2 Billion Army Contract to Build Huge Detention Tent Camp in Texas Desert," ASSOCIATED PRESS (Aug. 28, 2025), https://apnews.com/article/trump-immigration-detention-camp-contract-army-ice-

3595746cd420c6f83c4ffd0b331ae056 (last visited Jan. 25, 2026). Akima appears to be wholly owned by NANA Regional Corporation, Inc.

7.  U.S. Immigrations and Customs Enforcement ("ICE"), a sub-agency of DHS, announced that Mr. Lunas Campos died on January 3, 2026 at Camp East Montana.

8.  On January 21, 2026, the El Paso County Office of the Medical Examiner classified Mr. Lunas Campos's death as a homicide. The autopsy lists asphyxia due to neck and torso compression as the cause of death.

9.  As described further below, in sworn declarations, the Percipient Witnesses describe Mr. Lunas Campos being taken from a general population unit into a Segregated Housing Unit ("SHU") cell with arm and ankle shackles on. They heard a struggle and heard Mr. Lunas Campos stating that he could not breathe or was being asphyxiated, and then heard Mr. Lunas Campos go silent. *See* Declaration of Christopher Benoit ("Benoit Decl."), Exs. 10-14; Declaration of Charlotte Weiss ("Weiss Decl."), Exs. 1-2.

10. Petitioners reside in the State of New York. Many, if not all, of the guards and other staff working at Camp East Montana—who Petitioners anticipate naming as defendants in their anticipated lawsuit once their identities are ascertained—reside in El Paso and/or the Western District of Texas.

11. Based on evidence gathered to date, Petitioners anticipate that they may bring claims against the United States of America pursuant to the Federal Tort Claims Act (FTCA), and against Acquisition Logistics, LLC, Akima Global Services, LLC, and NANA Regional Corporation, Inc., and their employees and agents, pursuant to diversity jurisdiction and supplemental jurisdiction. They anticipate bringing, at a minimum, wrongful death and survival actions for negligence, battery, and assault. Petitioners therefore expect to be parties to an action cognizable in a United

States court.

12. Petitioners cannot presently bring the action because they must exhaust their administrative remedies prior to filing the FTCA claim in federal court. Furthermore, Petitioners are still in the process of conducting a pre-filing investigation. This investigation includes, but is not limited to, interviewing witnesses, identifying defendants and their employers, identifying the relationship between DHS, Acquisition Logistics, LLC and Akima Global Services, LLC, NANA Regional Corporation, Inc., and any other companies involved in or contributing to Mr. Lunas Campos's death. This may require significant investigation of information through Freedom of Information Act (FOIA) once detainee death reviews are completed.

13. Should the Court deny the requested relief, Petitioners face a high likelihood of not being able to obtain the Percipient Witness's testimony prior to them being removed from the United States.

14. As described further below, in sworn declarations, some Percipient Witnesses describe ICE officials or guards approaching them after Mr. Lunas Campos' death seeking their removal from the country. *See* Weiss Decl., Exs. 1-2. Other Witnesses affirm that they have signed removal orders and could be deported at any time. Another Percipient Witness faces a hearing on March 17, 2026. All Percipient Witnesses face imminent risk of being deported well in advance of the potential action being filed.

15. **With respect to subsection (B)**, the subject matter of the expected action is Mr. Lunas Campos's death that occurred while he was in federal immigration custody. Petitioners' interest is that they are his adult children and anticipate filing a lawsuit seeking justice and compensation for his death.

16. **With respect to subsection (C)**, Petitioners seek the testimony of the Percipient

Witnesses to establish the circumstances of Mr. Lunas Campos's death. Petitioners seek to elicit testimony that will bear on the following facts:

    i. The circumstances of Mr. Lunas Campos's death on January 3, 2026, including choking, restraints, and other uses of force by facility staff against him;

    ii. Mr. Lunas Campos's physical, emotional, psychological, and behavioral state on each day of his detention in Camp East Montana;

    iii. Any communications between Mr. Lunas Campos and fellow detained individuals, facility staff, and government officials from September 2025 to January 2026;

    iv. Actions taken or not taken by facility staff and government officials toward Mr. Lunas Campos from September 2025 to January 2026;

    v. Conditions of Mr. Lunas Campos's detention at Camp East Montana from September 2025 to January 2026; and

    vi. Actions taken or not taken by facility and/or government officials and employees regarding the provision of care to persons detained at Camp East Montana from September 2025 to January 2026.

    17. The Percipient Witnesses were at the same detention facility the day Mr. Lunas Campos died and, as described herein, all have provided sworn testimony that they in some way witnessed the circumstances leading to his death. The proposed testimony as to Mr. Lunas Campos's death is directly relevant to Petitioners' anticipated claims in litigation. The proposed testimony would support Petitioners' claim for the anticipated defendants' liability for Mr. Lunas Campos's death. Petitioners seek to perpetuate this testimony before the federal government makes them

6

unavailable by removing them to another country.[3]

18. **With respect to subsection (D)**, the anticipated adverse parties include the United States of America, Acquisition Logistics, LLC, Akima Global Services, LLC, and NANA Regional Corporation, Inc., and their employees and agents. Based on the evidence gathered to date, Petitioners anticipate that the acts and omissions of officers, agents, or employees of the DHS and ICE may form the basis of some or all of Petitioners' FTCA claims. The addresses for Defendant United States are Office of the Principal Legal Advisor District Court Litigation Division 500 12th Street, SW, Mailstop 5900 Washington, DC 20536; U.S. Department of Homeland Security Office of the General Counsel 245 Murray Lane, SW, Mailstop 0485 Washington, DC 20528-0485; United States Attorney's Office Western District of Texas; 601 NW Loop 410, Suite 600, San Antonio, TX 78216.

19. Based on the evidence gathered to date, Petitioners anticipate that the acts and omissions of officers, agents, or employees of Acquisition Logistics, LLC, Akima Global Services, LLC, and NANA Regional Corporation, Inc. may form the basis of their diversity and supplemental jurisdiction state law claims. The guards, supervisors, and warden who caused Mr. Lunas Campos's death likely reside in or near El Paso, Texas, but their addresses are presently unknown to Petitioners.

20. Acquisition Logistics, LLC is headquartered at 502 Branway Dr., Henrico, VA 23229.

---

[3] *See, e.g.*, *Penn Mut. Life Ins. Co. v. United States*, 68 F.3d 1371, 1375 n.3 (D.C. Cir. 1995) ("Several cases have stated that a potential deponent's plans to leave the country for a long period of time may be grounds for perpetuating testimony, presumably because the difficulties of serving process and conducting a deposition overseas create a risk of losing testimony.") (citing cases); *New Mexico ex rel. Balderas v. Real Estate Law Center, P.C.*, 406 F. Supp. 3d 1049, 1068 n.7 (D.N.M. 2019) ("Most petitions to perpetuate testimony have been granted when a witness is aged or gravely injured and in danger of dying or there are geographical constraints.") (internal quotation marks and citation omitted).

On information and belief, its executives, including owner Kenneth Wagner and Darrin Armentrout, reside in or near Virginia. On information and belief, Acquisition Logistics, LLC also has employees who are anticipated adverse parties located in El Paso, Texas.

21. Akima Global Services, LLC's current Texas Franchise Tax Public Information Report lists its Principal Place of Business at 909 W 9th Avenue, Anchorage, AK 99501 and its registered agent in Texas as CT Corporation System, 1999 Bryan Street Suite 900, Dallas, Texas 75201. Guards employed by Akima Global Services, LLC reside in or near El Paso, Texas. The location of its officers is presently unknown to Petitioners. Akima Global Services, LLC is wholly owned by NANA Regional Corporation, Inc. NANA Regional Corporation, Inc. is located at 909 W 9th Avenue, Anchorage, AK 99501. Its registered agent is CT Corporation System, located at 8585 Old Dairy Rd, Ste 208, Juneau, AK 99801.

22. **With respect to subsection (E)**, the names of the witnesses are Santos Jesus Flores, Antonio Ascon Frometa, Henry Negrin Bolaño, Jenrry Melendez, Mayron Pazpuerto, and Cobi Ardenis Nazareth. As of the date and time of this filing, ICE and Department of Justice databases indicate that all of the Percipient Witnesses are detained at Camp East Montana, located at 6920 Digital Road, El Paso, Texas 79936.

23. The expected testimony of Mr. Flores is the following: On January 3, 2026, Mr. Flores witnessed more than seven guards bring Mr. Lunas Campos to the segregation area of the facility in handcuffs and ankle shackles. *See* Weiss Decl., Ex. 2. Mr. Lunas Campos told guards that he needed his medication. *See id.* Mr. Flores heard what he believed to be guards punching Mr. Lunas Campos and heard Mr. Lunas Campos state that he could not breathe and that the guards were asphyxiating him. *See id.* Mr. Flores then witnessed guards running and looking scared. *See id.*

24. The expected testimony of Mr. Frometa is the following: Mr. Frometa knew Mr. Lunas

8

Campos from decades ago and, more recently, while they were detained in Camp East Montana ICE detention facility. *See* Weiss Decl., Ex. 1. On January 2, 2026, Mr. Frometa saw and heard Mr. Lunas Campos ask guards for his medicine, which they refused to do. *See* Benoit Decl. Ex. 12. On January 3, 2026, Mr. Frometa continued to ask guards for medicine, which they continued to refuse. *See id.* Mr. Frometa heard threaten Mr. Lunas Campos that they would take him to solitary confinement. *See id.*

25. The expected testimony of Mr. Negrin Bolaño is the following: On January 3, 2026, Mr. Negrin Bolaño was in the segregation unit at Camp East Montana. *See* Benoit Decl., Ex. 11. Mr. Negrin Bolaño overheard an altercation between Mr. Lunas Campos and staff, in which Mr. Lunas Campos was asking for his medication. *See id.* Mr. Negrin Bolaño then heard a struggle ensue and what sounded like the slamming of a person's body against the floor or a wall. *See id.* Mr. Negrin Bolaño heard Mr. Lunas Campos scream that he could not breathe. *See id.* Mr. Negrin Bolaño then heard the yelling stop and guards calling for help on their radios. *See id.*

26. The expected testimony of Mr. Melendez is the following: On January 3, 2026, Mr. Melendez was in solitary confinement at the Camp East Montana facility. *See* Benoit Decl., Ex. 13. Mr. Melendez heard Mr. Lunas Campos come into the SHU and heard Mr. Lunas Campos ask for his medicine. *See id.* Mr. Melendez heard guards yell at Mr. Lunas Campos to shut up or they would take action against him. *See id.* Mr. Melendez heard the scraping of metal and a struggle, and heard Mr. Lunas Campos state that they were asphyxiating him. *See id.* After that, Mr. Melendez heard silence. *See id.*

27. The expected testimony of Mr. Pazpuerto is the following: On January 3, 2026, Mr. Pazpuerto was in the solitary confinement unit of Camp East Montana. *See* Benoit Decl., Ex. 14. Mr. Pazpuerto will describe the SHU. *See id.* Mr. Pazpuerto overheard an argument between Mr.

9

Lunas Campos and guards in which Mr. Lunas Campos was asking for his medicine. *See id.* He also heard guards yelling at Mr. Lunas Campos. He heard what he believes was Mr. Lunas Campos being put in handcuffs and beaten. *See id.* Mr. Pazpuerto then heard Mr. Lunas Campos cry out for help stating that he could not breathe. *See id.* Shortly after that, Mr. Pazpuerto heard silence. *See id.*

28. The expected testimony of Mr. Ardenis Nazareth is that he was a direct eyewitness to the circumstances of Mr. Lunas Campos's death. *See* Benoit Decl., ¶ 22. His testimony is expected to describe the circumstances in which Mr. Lunas Campos died. Based on the testimony of other individuals with knowledge, he possibly could visually see what was happening to Mr. Lunas Campos from his cell. *See* Benoit Decl., Ex. 11.

29. Petitioners note that although the U.S. Department of Homeland Security's *Touhy* regulations, 6 C.F.R. § 5.41 *et seq.*, do not apply to actions in which federal agents or the federal government is a party, *see, e.g.*, *Watts v. Sec. & Exchange Comm'n*, 482 F.3d 501 (D.C. Cir. 2007), they have complied with these regulations for this pre-suit proceeding because it is styled as a miscellaneous action.

### IV.   RELIEF REQUESTED

30. Because the Percipient Witnesses are likely to be unavailable by the time Petitioners are able to initiate their anticipated federal action, Petitioners seeks to perpetuate the above-described testimony by way of pre-suit depositions, which will be critical to preserving their ability and opportunity to litigate their claims. Based on the foregoing, Petitioners respectfully requests the following relief:

    a. Issue an Order allowing Petitioners to take the oral depositions of Santos Jesus Flores, Antonio Ascon Frometa, Henry Negrin Bolano, Jenrry Melendez, Mayron

10

Pazpuerto, and Cobi Ardenis Nazareth to take place by February 20, 2026[4], and requiring that DHS and/or Akima Global Services, LLC, and/or NANA Regional Corporation, Inc., and/or Acquisition Logistics, LLC make these witnesses available for the depositions on or before that date;

b. Retain jurisdiction over this cause for the purpose of entering any necessary protective orders or adjudication of any disputes that may arise regarding any deponents; and

c. Grant any other relief as may be necessary and proper.

Date: January 26, 2026                    Respectfully Submitted

**BENOIT LEGAL PLLC**
311 Montana Ave, Ste B,
El Paso, TX 79902
(915) 532-5544

*/s/ Christopher Benoit*
Christopher Benoit
chris@coylefirm.com

**QURESHI LAW PC**
Will Horowitz*
will@qureshi.law
Max A. Schoening*
max@qureshi.law
700 Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: (213) 600-6096
Fax: (213) 277-8989

* *Admitted pro hac vice*

*Attorneys for Petitioners*

## Verification

---

[4] Petitioners require until this date to complete the required 21-day service on all potential defendants pursuant to Fed. R. Civ. P. 27(a)(2).

11

I, Christopher Benoit, an adult resident of the State of Texas being of sound mind and constitution, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that all allegations of fact in the foregoing Petition are true and correct to the best of my understanding.

By */s/ Christopher Benoit*
Christopher Benoit